UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20420-CR-JEM

UNITED STATES OF AMERICA

v.

ARMANDO ARIEL DE LEON,

Defendant.
_____/

## FACTUAL PROFFER

The United States of America (the "United States") and defendant Armando Ariel De Leon (the "defendant") agree that, were this case to proceed to trial, the United States would prove beyond a reasonable doubt the following facts, among others, which occurred in the Southern District of Florida and elsewhere:

### *The Paycheck Protection Program*

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan

application, the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### *The Economic Injury Disaster Loan Program*

Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including: information about the gross revenues for the business prior to January 31, 2020; and the cost of goods sold. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentations to the SBA, or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

### *Overview of the Defendant's Conspiracy*

From January 2021 through at least July 2021, the defendant agreed with Daniel Hernandez ("Hernandez") and others to submit false and fraudulent EIDL and PPP applications and share in a percentage of the resulting fraudulent loans. The defendant and Hernandez had previously worked together at Bank 1 until the defendant's dismissal from the bank in January 2021. Bank 1 was headquartered in New Jersey with branches in the Southern District of Florida. It was an approved SBA lender of PPP loans and insured by the Federal Deposit Insurance Corporation ("FDIC").

The defendant executed a series of tasks in furtherance of the conspiracy, including but not limited to the following. The defendant helped co-conspirators open bank accounts at Bank 1 to allow them to apply for fraudulent PPP loans at the bank. The defendant prepared and submitted

to the SBA over 50 false and fraudulent EIDL applications on behalf of co-conspirators. The defendant monitored the conspiracy's fraudulent PPP and EIDL applications, maintaining spreadsheets that catalogued the relevant information of each application. And the defendant received, on behalf of himself and Hernandez, certain commissions from co-conspirators who received fraudulent loans. For example, on approximately February 25, 2021, the defendant deposited into a bank account he controlled at Bank 2 and ending in 1225 a cashier's check from Bank 1 for $29,400. The check had been purchased by the owner of AC Export Express Corp., which had recently received a fraudulent PPP loan from Bank 1 in the amount of $488,320. The cashier's check was the defendant and Hernandez's commission for their assistance with securing the fraudulent loan.

The parties agree that these facts, which do not include all facts known to the United States and the defendant, are sufficient to prove the sole count of the information.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 10/25/22    By: _____
ELI S. RUBIN
ASSISTANT UNITED STATES ATTORNEY

Date: 10/25/22    By: _____
PAUL PETRUZZI
COUNSEL FOR DEFENDANT

Date: 10/25/22    By: _____
ARMANDO ARIEL DE LEON
DEFENDANT

4